IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CHARLESTON HUDSON                                                                        PLAINTIFF

v.                                                                           No. 3:15CV151-MPM-JMV

STATE OF MISSISSIPPI, ET AL.                                                          DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Charleston Hudson, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants improperly revoked his post-release supervision on a cyberstalking charge. The defendants have moved [34] for summary judgment, and Hudson has responded. The matter is ripe for resolution. For the reasons set forth below, the motion by the defendants for summary judgment will be granted, and judgment will be entered for the defendants.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the

nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings. Rather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id*. The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

**Undisputed Material Facts**

Charleston Hudson is in the custody of the Mississippi Department of Corrections ("MDOC") serving sentences for two counts of sexual battery.[2] He is currently housed at the Central Mississippi Correctional Facility. On November 22, 2010, in a single proceeding before the Circuit Court of Tippah County, Mississippi, Hudson pled guilty in Cause No. TK-2010-032 to Cyberstalking (Miss. Code Ann. § 97-45-15) and, in Cause No. TK-2010-100 to Jail Escape (Miss. Code Ann. § 97-9-49).

---

[2] He has completed serving his term of incarceration for previous sentences of cyberstalking and jail escape.

In that same proceeding, the trial court sentenced Hudson to five years' imprisonment with none suspended on the cyberstalking charge, and five years' imprisonment with five years suspended on the jail escape charge. Docs. 7-3, 7-4. The court also sentenced Hudson to five years of supervised release on both charges (though, as discussed below, it was error to apply a period of post-release supervision to the cyberstalking sentence). *Id.* The net effect of the sentence was that Hudson would be incarcerated solely on the five-year cyberstalking charge – then, upon release, have five years' post-release supervision on the escape charge.

Hudson was released from imprisonment for the cyberstalking conviction on February 25, 2013. His Mississippi Department of Corrections Discharge Certificate states that, as to the charges of cyberstalking and jail escape:

> MDOC Number K9018 Name Hudson, Charleston has completed sentence service of 5 Year(s) in the Mississippi Department of Corrections and is hereby **DISCHARGED ON February 25, 2013** due to Expiration of Sentence.

Doc. 1 at 49 (emphasis in original).

On September 24, 2013, the trial court issued an order holding that Hudson had violated the terms of his post-release supervision in Cause No. CR2010-32 (cyberstalking). Eight days later, on October 2, 2013, the state court also revoked Hudson's probation on an escape charge in Cause No. 2010-100. The revocation order in Cause No. CR2010-32 (cyberstalking) was vacated on July 14, 2015. In that order, the trial court acknowledged that "the petitioner was erroneously revoked on CR2010-32 [cyberstalking]." Doc. 1 at 12.

Under Mississippi's post-release supervision statute:

> [T]he total number of years of incarceration plus the total number of years of post-release supervision shall not exceed the maximum sentence authorized to be imposed by law for the felony committed.

Miss. Code. Ann. § 47-7-34(1). The maximum sentence for cyberstalking under Miss. Code Ann. § 97-45-15 is five years, and in 2010 the court sentenced Hudson to five years' incarceration on that

charge. However, as the sum of the terms of incarceration and supervised release on the single cyberstalking charge cannot exceed the maximum sentence (five years in this case), the court could not properly impose both a sentence of imprisonment of five years – and a period of supervised release on that same charge. Miss. Code Ann. § 47-7-34(1). Thus, when Hudson was released from incarceration on the cyberstalking charge, he had served that entire sentence.

The Discharge Certificate also states that:

> Hudson, Charleston is hereby remanded to the supervision of the Mississippi Probation and Parole Board to complete the suspended portion of his sentence under the jurisdiction of the court.

Doc. 1 at 49. Though less than clear, this part of the Discharge Certificate is also correct. Under the court's sentencing order, Hudson was under supervision (on the jail escape charge) from the moment he was released on the cyberstalking charge on February 25, 2013. The sentencing court had imposed a five-year period of supervised release on the jail escape charge, to be served *after* completion of the cyberstalking sentence:

> The recommendation is on the cyberstalking charge that he be sentenced to serve a term of 5 years, and on the jail escape he be sentenced to serve a term of 5 years; that they run consecutive to each other for a total to 10 years, but the jail escape charge be suspended and he be placed on 5 years' post-release supervision. The net effect of it would be he's got a 10-year sentence, 5 years suspended with 5 years to serve and that 5 years to serve will be on the cyberstalking charge . . . .

Doc. 1 at 47-48.

That is, ultimately, what occurred. Hudson's MDOC time sheet reflects that he has received credit for each day he spent in jail after the first revocation on September 24, 2013. Eight days passed between the erroneous revocation (September 24, 2013) and the proper one (October 2, 2013). According to Hudson's MDOC time sheet, he has been credited for those days, as the begin date on his current period of incarceration is September 24, 2013, rather than October 2, 2013. Finally, as of

May 13, 2016, the trial court held that plaintiff has completed serving his sentence on the escape charge:

> The Court hereby modifies the Order entered on October 2, 2013, that correctly revoked the probation of the Defendant in this case and suspends the balance of the time imposed in TK [20]10-100, that sentence now being suspended down to time served, it being the intention of the Court that the Defendant may now begin serving his consecutive sentence [on the sexual battery convictions] as imposed in Cause No. TK2013-063.

Doc. 44-1. Hence, Hudson is now serving his sentence for the sexual battery charges which gave rise to the October 2, 2013, parole revocation. He will be eligible for release in 2018.

## The Plaintiff's Claim

Hudson argues that, but for the erroneous revocation on the cyberstalking charge, he would not have been incarcerated from September 24, 2013 (the date on which post-release supervision was revoked) to July 14, 2015 (the date on which the erroneous revocation was vacated). Doc. 1. Hudson seeks money damages of $5,000 per day from September 24, 2013 (the date of erroneous revocation), through July 14, 2015 (the date on which the revocation was vacated). Doc. 1 at 4. Mr. Hudson also requests an order requiring the Mississippi Department of Corrections ("MDOC") to apply the time he served from September 24, 2013, through July 14, 2015, to his sentences in the sexual battery cases in Cause No. TK-2013-63. Doc. 1 at 8.

Mr. Hudson has named as defendants Robert Elliott, the Circuit Judge who signed the revocation order, Assistant District Attorney Kelly Luther, the state prosecutor that at the revocation hearing, and Steve Garrison, the parole/probation field officer for MDOC who arrested Hudson on the parole violation. He has also named the State of Mississippi as a defendant.

## The Merits of Hudson's Claim

The erroneous revocation order (regarding the cyberstalking charge) can be chalked up to a scrivener's error; its language identical to the correct one (on the jail escape charge), but for the cause

number. *The trial court simply put the wrong cause number on an otherwise perfectly valid revocation order.* The erroneously-numbered revocation order actually re-imposed the sentence of the correct conviction (jail escape) – five years' incarceration, with five suspended, and five years' post-release supervision. Thus, everything about the September 24, 2013, revocation order was correct – except the case number.

It is easy to see how the error occurred. First, the terms of supervised release in both 2010 sentencing orders is identical (though the cyberstalking order should have included neither a period of supervised release nor terms of such release). Thus, it would appear, upon initial reading, Hudson's acts violating the terms of release as to one sentencing order would also violate the other. Second, the reasons for revoking supervised release in the two 2013 revocation orders is also identical, namely, that Hudson:

> Failed to live at liberty without violating the laws in that this offender has been charged with the new Felony crime of Sexual Battery in Tippah County MS. This offender also absconded from supervision, failed to remain free from use or possession of illegal drugs in that he tested positive for the use of Marijuana on a random drug test given to him on March 5, 2013 and failed to pay the Circuit Court of Tippah County any court fines, fees or restitution in his matter and also failed to pay the Mississippi Department of Corrections in the nature of supervision fees.

Doc. 1 at 44, Doc. 34-1. Further, the two offenses, cyberstalking (No. CR2010-32) and escape (No. CR2010-100), were tried together, and the sentences were imposed together. Finally, the cyberstalking sentencing order was improper because the sum of the terms of incarceration and supervised release was greater than the five-year maximum sentence under the cyberstalking statute. Thus, given the erroneous supervised release language, to the court looking back several years, it would appear that the cyberstalking sentence did, indeed, include a period of supervised released, even though, under the law, it could not.

In any event, the trial court committed a harmless scrivener's error, which it corrected with a proper revocation order and credit for Hudson's eight days of incarceration (the time it took the court to correct the error). This is not a case where the court erroneously revoked the probation or parole of an inmate serving only one sentence – thus improperly lengthening the inmate's period of incarceration. The error in this case was harmless because the duration of Hudson's incarceration did not change. As such, this issue is without merit, and judgment will be entered for the defendants.

### *Habeas Corpus* Claims Not Appropriate Under 42 U.S.C. § 1983

Mr. Hudson seeks an order for the time he served from September 24, 2013, through July 14, 2015, to count towards his sentences in the sexual battery cases in Cause No. TK-2013-63 [1 at 8] which would entitle him to an accelerated release from custody. Such a claim is inappropriate in a § 1983 suit, as an inmate must pursue claims affecting his eligibility for, or entitlement to, accelerated release through a petition for a writ of *habeas corpus*. *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997)(citing *Pugh v. Parish of St. Tammany*, 875 F.2d 436, 439 (5th Cir. 1989)). A "prisoner in state custody cannot use a Section 1983 action to challenge 'the fact or duration of his confinement.'" *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005)(quoting *Preiser v. Rodgriquez*, 411 U.S. 475, 489 (1973)). Thus, Mr. Hudson's request for the court to effectively shorten his term of incarceration will be dismissed for failure to state a proper claim under 42 U.S.C. § 1983.

### *Heck*

Mr. Hudson's request for money damages based upon his claim that he was incarcerated illegally must likewise be dismissed. The Supreme Court has clarified the relationship between actions under 42 U.S.C. § 1983 and *habeas corpus* proceedings. *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). A claim under 42 U.S.C. § 1983 that calls into question the

lawfulness of conviction or confinement – or otherwise demonstrates the invalidity of the conviction or confinement – is not cognizable under § 1983 until such time as a § 1983 plaintiff is able to

> prove that the conviction or sentence has been *reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus*, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 114 S. Ct. at 2372; *see also Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994). Only if the court finds that the plaintiff's § 1983 suit, even if successful, "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," should the § 1983 action be allowed to proceed. *See Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995).

In the present case, Hudson's success in his claim for damages based on a theory of illegal incarceration would necessarily draw into question the validity of his conviction or sentence. As discussed above, Hudson's initial revocation order suffered only from a scrivener's error, which was quickly corrected. Nothing about that revocation calls into question either the fact or length of his incarceration. As Hudson has not shown that his conviction or sentence has been vacated or otherwise invalidated, his claim for damages for illegal incarceration must be dismissed for failure to state a claim upon which relief could be granted.

**Eleventh Amendment**

Hudson's claims against the State of Mississippi will also be dismissed. The Eleventh Amendment prohibits actions against a state actor without the state's consent, and the State of Mississippi has not consented to suit in federal court on these claims. *Brooks v. George County, Mississippi*, 84 F.3d 157, 168 (5th Cir. 1996).

**Judicial Immunity**

Mr. Hudson has also named then Circuit Judge Robert W. Elliott as a defendant, alleging that Judge Elliott violated his constitutional rights by revoking his post-release supervision on the

cyberstalking charge on September 24, 2013. Under these facts, Judge Elliott enjoys absolute immunity from suit, as all of the acts complained of were judicial in nature. In *Sindram v. Suda*, 986 F.2d 1459 (D.C. Cir. 1993), Sindram, a very frequent filer in the Courts of the District of Columbia sued in the United District Court seeking compensatory and punitive damages from two judges and several clerks of the D.C. Superior Court. In dismissing the complaint, the lower court relied on the doctrine of absolute judicial immunity. The Appellate Court affirmed the dismissal of Sindram's action, imposing sanctions for falsifying affidavits in support of *in forma pauperis* petitions and prohibiting Sindram from filing any new civil actions *pro se* before paying the sanctions, holding that these actions were well within the judges' judicial capacity and jurisdiction.

Courts must construe a judge's jurisdiction broadly where the issue is the immunity of the judge. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Crooks v. Maynard*, 913 F.2d 699, 701 (9th Cir. 1990);

> In *Forrester v. White*, 484 U.S. 219 (1988) the court held:
>
> As a class, judges have long enjoyed a comparatively sweeping form of immunity, though one not perfectly well defined. Judicial immunity apparently originated, in medieval times, as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error. See Block, *Stump v. Sparkman* and the History of Judicial Immunity, 1980 Duke L. J. 879. More recently, this Court found that judicial immunity was "the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country." *Bradley v. Fisher*, 13 Wall. 335, 347 (1872). Besides protecting the finality of judgments or discouraging inappropriate collateral attacks, the *Bradley* Court concluded, judicial immunity also protected judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.

*Id.*, at 348.

> If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits, *Id.*, at 660-661. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences

of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

*Id.*, at 226-227. In *Mireles v. Waco*, 502 U.S. 9 (1991), the Supreme Court held:

> A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages. See, *e.g.*, *Forrester v. White*, 484 U.S. 219 (1988); *Cleavinger v. Saxner*, 474 U.S. 193 (1985); *Dennis v. Sparks*, 449 U.S. 24 (1980); *Supreme Court of Va. V. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980); *Butz v. Economou*, 438 U.S. 478 (1978); *Stump v. Sparkman*, 435 U.S. 349 (1978); *Pierson v. Ray*, 386 U.S. 547 (1967). Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 13 Wall. 335, 347 (1872).

*Id.* at 9-10. The Court also stated:

> Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. *Pierson v. Ray*, 386 U.S., at 554 ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). See also *Harlow v. Fitzgerald*, 457 U.S. 800, 815-819 (1982) (allegations of malice are insufficient to overcome qualified immunity).
>
> Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Forrester v. White*, 484 U.S., at 227-229; *Stump v. Sparkman*, 435 U.S., at 360. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.*, at 356-357; *Bradley v. Fisher*, 13 Wall., at 351.

*Id.* at 11-12. In addition, the Court held:

> But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id.*, at 356. See also *Forrester v. White*, 484 U.S., at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). Accordingly, as the language in *Stump* indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." 435 U.S., at 362. In other words, we look to the particular act's relation to a general function normally performed by a judge, . . . . *Id.* at 12-13.

In *Dellenbach v. Letsinger*, 889 F.2d 755 (7th Cir. 1989), *cert. denied*, 494 U.S. 1085 (1990),

The Court with respect to jurisdiction over the subject matter, held:

> The control of a docket is a key function to the proper workings of a court, and although Mr. Dellenback boldly states - without a citation of authority - that Chief Judge Buchanan's status as Chief Judge did not give him authority to act" without some specific designation of jurisdiction," Appellant's Br. at 13, that proposition is not at all self-evident. Again if the judge erred in his belief that he had authority to delay the appeal, his error was at most, a "grave procedural error" - not an act undertaken in "the clear absence of all jurisdiction." *Id.* at 761.

With respect to judicial capacity, the Court noted the approach in <u>Stump</u> in analyzing the issue of whether the act is a judicial act:

> "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.* whether it is a function normally performed by a judge, and to the expectation of the parties, *i.e.* whether they dealt with the judge in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 110. *Id.* at 761.
>
> . . .
>
> The Court also noted that the Supreme Court had noted that "[c]ourts and judges often act *ex parte*" 435 U.S. 363 N.12, 98 S.Ct. at 1108 N.2. Furthermore, the Court specifically stated, as recently as its opinion in *Forester* that "the informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." 484 U.S. at 227, 108 S.Ct. at 544.

*Id.* at 762. The Court reaffirmed justification of absolute judicial immunity on the ground that:

> Suits against federal judges [are not] the only available means through which litigants can protect themselves from the consequence of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

*Id.* at 762. Thus, for these reasons, all of the plaintiff's claims against Judge Robert W. Elliott must be dismissed under the doctrine of absolute judicial immunity.

## Prosecutorial Immunity

Plaintiff has named state prosecutor Kelly Luther and alleged that Luther violated his constitutional rights by revoking his post release supervision on the cyberstalking charge. Similar to judicial officers, prosecutors who are performing prosecutorial acts enjoy absolute immunity from liability and suit.[3] *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976); *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997); *Spivey v. Robertson*, 197 F.3d 722, 726 (5th Cir. 2000). Traditional functions of an advocate are those functions which are intimately associated with the judicial phase of the criminal process, including, but not limited to whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against a particular defendant, which witnesses to call, and what other evidence to present. *Imbler*, 42 U.S. at 430-431, n. 33.

A prosecutor is absolutely immune from any suit arising out of his duties as an advocate, regardless of the egregious nature of the allegations. *Imbler v. Pachtman*, 424 U.S. 409 (1976) (prosecutor absolutely immune from liability where he knowingly used perjured testimony, deliberately withheld exculpatory evidence, and failed to disclose all facts casting doubt upon state's testimony); *Esteves v. Brock*, 106 F.3d 674 (5th Cir. 1997)(prosecutor absolutely immune from claims of using peremptory challenges in racially discriminatory manner); *Brandley v. Keeshan*, 64 F.3d 196 (5th Cir. 1995) (prosecutory absolutely immune from claim of witness intimidation and suppression of evidence, even if prosecutor knew of and directed witness intimidation and suppression of evidence); *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) (prosecutor immune from suit alleging knowing use of perjured testimony, malicious prosecution, and conspiring with the judge to predetermine the outcome of a judicial proceeding). Such immunity is necessary; otherwise

---

[3] Although prosecutors enjoy only qualified immunity when they function as investigators or administrators, *Imbler*, 424 U.S. at 430, the plaintiff has not alleged that the prosecutor participated in the investigation.

> [t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.

*Imbler*, 424 U.S. at 425 (citations omitted). As it is clear this defendant is immune from suit, the claims against the prosecutor will be dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B). *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995). Thus, all of Hudson's claims against prosecutor Kelly Luther must be dismissed under the doctrine of prosecutorial immunity.

## Conclusion

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and the judgment will be entered for the defendants.

**SO ORDERED**, this, the 3rd day of March, 2017.

        **/s/ MICHAEL P. MILLS**
        **UNITED STATES DISTRICT JUDGE**
        **NORTHERN DISTRICT OF MISSISSIPPI**